Hamilton *et al. vs.* The Grangers' Life and Health Insurance Co.

---

HAMILTON *et al. vs.* THE GRANGERS' LIFE AND HEALTH INSURANCE COMPANY.

1. To a suit by a corporation against one of its stockholders, the defendant may plead and recover as a set-off any sum of money obtained from him by fraud as a subscription to the stock; unless, being a subscriber, there are debts of the corporation unpaid, incurred after his subscription, to the amount of the sum so paid, or greater. ·

2. If there were any errors in this case, they were immaterial, and did not hurt the defendants.

Corporations. Stockholders. Set-off. Fraud. Debtor and Creditor. Before Judge UNDERWOOD. Floyd Superior Court. March Term, 1881.

Reported in the decision.

D. B. HAMILTON; JOEL BRANHAM, for plaintiffs in error.

DABNEY & FOUCHE, for defendant.

SPEER, Justice.

The Grangers' Life and Health Insurance Company sued D. B. Hamilton as principal, and Alfred Shorter as security, on a promissory note dated 8th of October, 1877, and due on the first day of January thereafter, for the sum of five hundred dollars. The suit was brought for the use of F. E. Davidson, and indorsed to him by said company.

To this suit defendant filed the plea of general issue; and also a plea of set-off, alleging an indebtedness on the part of the company to defendant in the sum of two hundred and fifty dollars, paid to it by defendant on account of subscription to stock in said company on the 10th of August, 1875, which defendant was induced to make and pay by the false and fraudulent representations of its officers and agents upon which he acted, and of the falsity of which he had no means of ascertaining. The false and fraudulent representations were in substance as follows:

That the Georgia department of said company was to have a charter, which had been refused by said company. That $100,000.00 had been therefor subscribed and actually paid in at the home office. That of the $100,000.00 to be subscribed by each state department only ten per cent. thereof was to be called in, except to pay death losses, and not then until all the other assets of the company had been exhausted, and that non-negotiable, non-interest bearing notes were to be given for the remaining ninety per cent. of said department stock. That the reserve fund was to be loaned in the department. That the note sued on had been obtained by the home company surreptitiously. That all the foregoing representations were untrue. That if they had been true the stock would have been at par, whereas it was worthless..

That Davidson, the usee, before the pretended assign-

ment of the note sued on, had notice of the false and fraudulent representations. Defendant further pleaded a set-off of fifty dollars money expended by him in attending to the business of the company.

Further defendant pleaded, the company was a non-resident corporation, and the stockholders, including Davidson, were indebted to the company more than enough to pay all its liabilities, and the assignment was made with a view to defeat defendant's rights against the company. Further, defendant pleaded, the company had no power to receive subscriptions beyond the $100,000.00, the sum fixed by its charter, and that had been subscribed for and taken before defendant's subscription, and it was therefore null and void.

Under the evidence and charge of the court the jury returned a verdict for the plaintiff for the sum of four hundred and forty-nine dollars and fifty-four cents principal, with interest and cost.

The errors assigned are:

(1.) The striking the last plea filed by the defendants.

(2.) In excluding from the jury, as evidence, a letter written by defendant and others to the board of directors of the Grangers' Life and Health Insurance Company, Mobile, Alabama, dated at Rome, Georgia, 20 June, 1876, as set forth in the bill of exceptions.

(3.) In excluding as evidence certain resolutions of the board of trustees of 10th November, 1877, at Rome, Georgia, defendant being one of them, on the report made by Hamilton on his return trip made from Mobile.

(4.) In refusing to rule out the testimony of M. G. Hudson that related to an assignment.

(5.) In not excluding from the jury a *fi. fa.* obtained in Floyd superior court against the Grangers' Life and Health Insurance Company, dated 21st October, 1879, principal, $2,000.00; interest to judgment, $385.00, with a return thereon of *nulla bona.*

(6.) The following portions of the charge of the court to the jury were also excepted to and assigned as error:

(*a.*) The defendant has the right to plead as a set-off any sum of money obtained from him by fraud, unless the defendant is a subscriber and paid the money as ten per cent. on a subscription for stock, and there are debts to the amount greater than $250.00 unpaid.

(*b.*) If the subscription was obtained by fraud, and the fraud is proved as between the Grangers' Company and the defendant, they could not recover it, unless there are proved to be debts to as great an amount.

(*c.*) If the defendant was a stockholder, and had an opportunity of finding out whether or not the $100,000.00 was paid by the exercise of due diligence, he can take no advantage of that.

In reviewing the questions made, we need but inquire whether the rules of law excepted to and given by the court in charge to the jury, as set forth in the sixth ground, were correct and applicable to the case; for if they were then the errors assigned on striking the plea, and the exclusion of evidence complained of, did no harm to defendant, for the admission of the evidence, or retaining the plea, could not have availed as a defense. The evidence shows that this home company, located at Mobile, Alabama, and acting under a charter of that state, sought to organize branch departments in other states, and it was under this authority a department for this state was organized at Rome, Georgia, and under said organization the defendant, D. B. Hamilton, became a subscriber to shares of stock, and on said subscription paid, as an installment, the sum of two hundred and fifty dollars. Subsequently to this he obtained a loan from the department directors of the company of the sum of five hundred dollars, giving Alfred Shorter as his security. The loan was made to Hamilton by the department directors as other loans.

He testified: "I borrowed this five hundred dollars because I knew I had been swindled by the company, and I wanted to be in a position to secure myself. I continued

acting with the directors until the company ceased to do business, in 1878."

The main and controlling question, therefore, in this case is, whether the charge of the court was right when he instructed the jury "that the defendant had the right to plead as a set-off any sum of money obtained from him by fraud, unless the defendant is a subscriber and paid the money as ten per cent. on a subscription for stock, and there are debts unpaid, due by the company to an amount greater than two hundred and fifty dollars."

When this case was before this court heretofore, 65 *Ga.,* 750, it was held: "The plea of set-off extends to all mutual demands existing between the parties at the date of the commencement of the action. Therefore money procured by the plaintiff from the defendant by fraud may be set off against a suit on a note for money loaned." This, no doubt, as an abstract legal proposition, is correct, and was so ruled on a demurrer to a plea in this case, but the judge below held, and so instructed the jury, it would not apply, "and such set-off would not be available as a defense where the defendant was a subscriber for stock in the company, and he paid the money sought to be set off as ten per cent. on such subscription for stock, and there are debts due and unpaid by the company to an amount greater than the two hundred and fifty dollars. We think the exception to the rule made by the court is well founded in law.

Stockholders who are sued to recover installments on stock due by them to the company, where it is insolvent and owing debts, cannot protect themselves from such liability as to third persons, whatever may be the stipulation between the stockholders and the company, nor would a set-off be allowed for payments on such stock, though the stockholders may have been induced by fraudulent representations to subscribe for such stock. Thomp. on Liability of Stockholders, §168, and authorities there

cited.    Paying calls on shares subscribed will estop an ori-
ginal subscriber for shares from denying his liability for
future calls, for by thus contributing to the actual working
capital of the company he becomes entitled to share its
profits if any should be made, and, as a consequence, he
becomes in case of a joint stock company a partner in
the concern, and as such is liable to its creditors.    So one
who, on the other hand, subscribes for stock in a company
is a stockholder, although he may have failed to pay calls
thereon.    He cannot of course plead his own default in
discharge of his contract.    Neither will one who accepts
shares in a company and receives dividends thereon be
allowed to deny the validity of the shares.

As a general rule, one who participates in the profits of
a corporation as a share-holder by receiving dividends,
etc., is held liable to the creditors, and the equities or
fraud attaching to his title are things with which the cred-
itors have nothing to do.

If a person purchase shares, or subscribe for the same
and suffer his name to appear upon the books and take a
part in the management of the corporation as director, or
otherwise, he will not be allowed at the instance of a suit
by creditors to impeach his own title.    His title may be im-
perfect, tainted with fraud.    Equities may exist between
him and the company, yet he will not be allowed to deny
the truth of the representation he has made by his con-
duct and disavow the ownership or the consequent liability
when it ceases to be a benefit and comes to be a burthen.
22 N. Y., 17.

It was in full accord and harmony with these general
principles that this court held in the case of *Turner vs.
The Grangers' Life and Health Insurance Company*, 65 *Ga.*,
649, that "Though subscription to the stock of an insu-
rance company may have been induced by fraudulent repre-
sentations, yet the subscriber cannot recover the amount
paid if there are creditors to an equal or larger amount
on debts contracted after his subscription.    As to such

debts the funds of the corporation, including his sub-scription, are held in trust for their payment."

We recognize the rule given in charge by the court and excepted to as fully sustained by the case above referred to. And as the other assignments of error complained of could not affect or change this rule of liability of this plaintiff in error, under this view of the case, we deem unnecessary to pass upon them. Suffice it to say that plaintiff in error cannot escape his liability on this debt by reason of any of the defenses made in the record. Let him discharge the duty he owes to the creditors of a company of which he was an active and influential member, as appears from the record, by paying this debt. If he has individual grievances against others for fraud or misrepresentation, the courts are open to his complaints.

Let the judgment below be affirmed.